# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

MATTHEW J. NICHOLSON,

Plaintiff-Appellant,

v.

CITY OF YOUNGSTOWN, OHIO ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0099**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2024 CV 00679

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed in part.
Reversed and Remanded in part.

---

*Atty. Matthew C. Giannini* and *Atty. Jennifer Boyle Beck*, for Plaintiff-Appellant

*Atty. Lori Shells Simmons*, Director of Law, City of Youngstown, and *Atty. James Vivo*, First Assistant Law Director, for Defendants-Appellees

Dated: May 23, 2025

---

**WAITE, J.**

{¶1} Appellant Matthew J. Nicholson filed a complaint against the City of Youngstown for demolishing a house he owned without giving him notice of the demolition order or any prior indication that there were problems or code violations regarding the property. Appellees responded that no notice was required because the Youngstown Fire Chief declared the demolition to be necessary due to an emergency. They also argued that they were not liable on grounds of political subdivision immunity and because Appellant failed to plead a procedural due process claim. The parties filed competing motions for summary judgment, and the trial court awarded judgment to Appellees. Appellees failed to timely respond to this appeal. As Appellant's complaint does include a due process claim and Appellant pleaded facts to indicate there was no emergency justifying the demotion, the record reveals that questions of material fact exist. Complete summary judgment was not warranted in this matter. The judgment of the trial court is reversed as to count two of the complaint, and the case is remanded for further proceedings.

Facts and Procedural History

{¶2} On April 5, 2024 Appellant filed a complaint in the Mahoning County Court of Common Pleas alleging that Appellees illegally demolished his house located at 125 Clarencedale Avenue, Youngstown. The defendants included the City of Youngstown, the mayor, the Department of Public Works, and the Department of Property Code Enforcement and Demolition. Appellant alleged he became the owner of 125 Clarencedale Avenue by quit claim deed dated October 14, 2020. The property was continually under a lease during his ownership, and his tenant had not given him any

indication that there were problems or defects regarding the property. Appellant's complaint alleged that on August 23, 2021, the Fire Chief of the City of Youngstown issued a demolition order for the property. The house was demolished on September 20, 2021. Appellant's complaint contained five claims: (1) taking property without just compensation; (2) denial of due process of law; (3) negligence; (4) conversion; and (5) trespass. He requested damages in excess of $300,000, costs, and interest.

{¶3} The case was submitted to a magistrate. The parties unanimously consented to the magistrate presiding over a jury trial.

{¶4} Appellees filed an answer and counterclaim on April 17, 2024. Appellees admitted they knew or should have known that Appellant was the owner of the property. They admitted they issued a permit for demolition on August 23, 2021. They admitted the demolition documents did not mention that Appellant was the owner. Appellees' counterclaim sought demolition expenses in the amount of $7,038.05.

{¶5} Appellees filed a motion for summary judgment on July 2, 2024.

{¶6} Appellant filed his own motion for summary judgment and answer to the counterclaim on July 19, 2024. He separately filed his personal affidavit asserting that the house was in good condition, there had been a tenant occupying the house since 2019, Appellees had not issued any prior notices of violation of the city codes, the house was demolished without a reasonable basis, and that the City gave him no notice prior to the demolition.

{¶7} On September 20, 2024 Appellees filed a copy of an order from the Youngstown Fire Chief, dated August 23, 2021, ordering emergency demolition of the house. They also filed an invoice for demolition costs in the amount of $7,038.05. This

invoice is dated September 20, 2021, which appears to be the date the house was demolished. Conspicuously absent, however, was any evidence to support the Fire Chief's emergency order.

**{¶8}** On September 30, 2024 the magistrate issued an order overruling Appellant's motion for summary judgment and granting Appellees' motion for summary judgment. Also on September 30, 2024, the trial court issued its final judgment adopting the magistrate's order. Appellant filed objections to the magistrate's order on October 15, 2024. On October 24, 2024, the magistrate issued an order stating that as the parties had consented to the jurisdiction of the magistrate over all matters in the case, objections were not permitted under Civ.R. 53(C)(2). This timely appeal followed on October 28, 2024.

**{¶9}** Appellant has raised a single assignment of error. Appellees did not file a timely brief in this appeal. Appellees did file a brief after both the briefing period had expired, as well as the expiration of an extension we granted sua sponte. Hence, that brief will not be considered on appeal. (4/7/25 Order). Under Civ.R. 18(C), we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

Summary Judgment Standard of Review

**{¶10}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a

matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).  Whether a fact is "material" depends on the substantive law of the claim being litigated.  *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995).

{¶11}  "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim."  (Emphasis deleted.)  *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996).  If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial.  *Id.* at 293.  In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor.  *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist. 1997).

{¶12}  The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party.  *Temple*, 50 Ohio St.2d at 327.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT REMAIN, REQUIRING RESOLUTION BY THE TRIER OF FACT.

{¶13} Appellant's complaint sought to recover compensation from the City of Youngstown for demolishing a house that he owned. A tenant had been continuously occupying the property and Appellant had not received any complaints from the tenant that there were problems with the property or that repair or maintenance was necessary. Appellant contends that Appellees failed to notify him of any problems with the house or that the property was in violation of any Youngstown codes or ordinances, and they failed to give him prior notice that the house was scheduled for demolition. Appellant argues that unless there was proof of an actual emergency that required immediate demolition, Appellees were required to give him notice and opportunity to mitigate any problems. There is no dispute that Appellees demolished the house without notifying Appellant. Appellant contends that the demolition was an unconstitutional "taking without just compensation" under the Ohio and Federal Constitutions, and that Appellees deprived him of his constitutional right to procedural due process.

{¶14} Appellees admitted they knew or should have known that Appellant was the owner of the property. In their trial court documents they argued that prior notice was unnecessary because the Fire Chief declared that the house was a public health hazard, that it created an immediate threat to public health and safety, and as such, its condition

constituted an emergency. They cited Youngstown Codified Ordinance 1525.01(c) that allows the Fire Chief to order the demolition of any unsafe structure in case of an emergency. They also cited Youngstown Codified Ordinance 1309.04, stating that emergency demolitions require no prior notice to the property owner. They submitted no evidence in support of the alleged emergency.

{¶15} Appellees also argued they were immune from any tort claims raised by Appellant by virtue of the governmental immunity statute, R.C. 2744.01 et seq. R.C. 2744.02(A)(1) relieves a political subdivision from liability for injury or loss caused by an act or omission in connection with a governmental or proprietary function. *Lawson v. Mahoning Cnty. Mental Health Bd.*, 2010-Ohio-6389, ¶ 20 (7th Dist.). Appellant takes issue with the trial court's decision to bar all five of the counts in his complaint on grounds of governmental immunity. Appellant does not challenge the trial court's conclusion that his claims for negligence, conversion, and trespass were barred by governmental immunity. Appellant focuses, however, on the first two counts of his complaint: unlawful taking without compensation, and violation of procedural due process. Appellant contends that the unlawful demolition of a house implicates both of these constitutional provisions, and that R.C. 2744.09(E) provides an exception to governmental immunity for these claims.

{¶16} Since the enactment of R.C. 2744.01 et seq., plaintiffs have generally been prevented from bringing wrongful demolition tort claims under Ohio state law due to political subdivision immunity. *Englewood v. Turner*, 2008-Ohio-4637, ¶ 23 (2d Dist.). Plaintiffs are able to bring claims under federal law by virtue of R.C. 2744.09(E), which states: "This chapter [R.C. 2744] does not apply to . . . (E) Civil claims based upon alleged

violations of the constitution or statutes of the United States . . . ."  Appellant argues that R.C. 2744.09(E) provides a "carve out," or exception to the defense of sovereign immunity for alleged violations of constitutional rights.

{¶17} State and federal courts have disallowed Ohio's sovereign immunity defense in wrongful demolition cases where federal constitutional claims are made, particularly under 42 U.S.C. 1983.  *Id.* at ¶ 23.  To establish a claim under 42 U.S.C. 1983, a plaintiff must demonstrate two elements: "(1) the conduct in controversy must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States."  *1946 St. Clair Corp. v. Cleveland*, 49 Ohio St.3d 33, 34 (1990).

{¶18} Although the trial court concluded that Appellant did not sufficiently plead any constitutional claims, Appellant contends that the first two counts in the complaint are clearly constitutional claims.  Appellant used terms of art such as "taking for which just compensation should have been made" and "due process of law," clearly invoking constitutional rights.  It should be noted that the phrase "due process of law" is not contained in Ohio's Constitution, but appears in the U.S. Constitution in the Fifth and Fourteenth Amendments.  The Ohio Constitution utilizes the phrase "due course of law." Ohio Const., art. I, § 16.

{¶19} As to Appellant's claim that Appellees acted under the color of state law, it is self-evident from the complaint.  The defendants are the City of Youngstown (a political subdivision of the state), its mayor, the Department of Public Works, and the Department of Property Code Enforcement and Demolition.  The demolition took place under the alleged authority of an order from the Youngstown Fire Chief, a public official.  Appellant

cited what he believed was the law under which they acted, R.C. 715.26. Appellant did not cite the phrase "under the color of state law" in his complaint, but Appellees did not argue in summary judgment that Appellant was required to use that exact phrase.

{¶20} Appellees never directly challenged Appellant's argument that he pleaded sufficient facts and made sufficient references to a procedural due process violation to satisfy Ohio's pleading requirements and overcome Appellees' immunity defense. We recognize "Ohio is a notice-pleading state, and Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity. We have declined to apply a heightened pleading standard by requiring a plaintiff to assert how or why the political subdivision is not immune from suit, holding that adoption of such a standard would require a plaintiff to anticipate affirmative defenses and exceptions at the inception of the litigation.' *Ganzhorn* [*v. R & T Fence Co., Inc.*, 2011-Ohio-6851 (11th Dist.)] at ¶ 24." *Granite City Ctr., LLC v. Bd. of Trustees of Champion Twp.*, 2021-Ohio-1458, ¶ 21 (11th Dist.).

{¶21} Appellant contends he provided proof that he received no prior citations from the City of Youngstown regarding any code violations, had no complaints from his tenant, had no notice of the demolition order, and that the demolition was not actually undertaken as an emergency because over a month passed between the issuance of the demolition order and the actual demolition.

> Where a building fails to comply with the building code requirements and is in a dangerous and unsafe condition, it can be razed by municipal officials when properly authorized by ordinance. However, where the building can be repaired and the danger to the public is not so imminent that

it requires immediate razing of the building, the owner must be given a reasonable time in which to repair the building, if he so desires.

*Fifth Urban, Inc. v. Bd. of Bldg. Standards*, 40 Ohio App.2d 389, 398 (8th Dist. 1974).

**{¶22}** While recovery is not permitted for wrongful demolition under the takings clauses of the Ohio and United States Constitutions, recovery is available for the due process violation involved. This is because the demolition of a structure by the state due to health and safety concerns is considered to be an act of the police power of the state, rather than an exercise of its eminent domain power for which just compensation must be given. *City of Cleveland v. W. E. Davis Co.*, 1996 WL 403337 (8th Dist. July 18, 1996); *Fifth Urban, Inc.* at 398. Nevertheless, "[W]here a city has failed to provide a property owner with an opportunity for hearing or appeal prior to the razing of property, the city has denied the owner due process of law. In such instance, there is no immunity under R.C. Chapter 2744. See R.C. 2744.09(E). In addition, the city will be precluded from receiving its demolition costs." *Englewood v. Turner, supra,* ¶ 23; *see also Grieb v. Dept. of Liquor Control*, 153 Ohio St. 77, 81-82 (1950).

**{¶23}** In their cross-motions for summary judgment both Appellant and Appellees relied on a federal district court case to support their opposing positions: *Two Bridges, LLC v. City of Youngstown*, 2022 WL 1487607 (N.D.Ohio May 10, 2022), *aff'd* 2023 WL 4030071 (6th Cir. June 15, 2023). This case also involves a wrongful demolition claim against the City of Youngstown. Two Bridges, LLC ("Two Bridges") purchased property on Oak Hill Avenue in Youngstown in 2019. The building had been vacant for six years before the purchase. Soon after, Youngstown issued a variety of public safety citations against the property. Two Bridges appealed the citations, explaining that a number of the

cited problems had been corrected. In January of 2020, there were reports that bricks were falling off of the building. Youngstown issued a further citation, and Two Bridges later reported that this situation had been corrected.

{¶24} The Youngstown Fire Chief inspected the building on June 12, 2020 and determined that the building needed to be demolished due to a sagging roof and because the facade bricks were not secure. An emergency demolition order was issued on June 19, 2020. Two Bridges was not given notice of the demolition order. While waiting for the demolition to take place, the City of Youngstown continued to investigate and inspect the building. The demolition ultimately took place on August 22, 2020, 71 days after the demolition order.

{¶25} Two Bridges filed a two-part complaint, arguing that the City of Youngstown Ordinance allowing for demolition without notice was unconstitutional, and that demolition of the property without notice was a due process violation. The district court ruled that the Ohio statute governing demolition, R.C. 715.26, allowed for emergency circumstances in which no notice would be given. Thus, the statute was not in conflict with the Youngstown City Ordinance allowing emergency demolition without prior notice. More importantly, though, the court held that a due process claim is permitted when the government's assertion that an emergency existed is unsubstantiated. "When there is actually no emergency condition or necessity for quick action, and nothing prevented the municipality from providing pre-deprivation process, . . . city officials may not deny citizens due process by falsely invoking an emergency need for quick action." *Id.* at *6. The *Two Bridges* record reflected that the actual demolition took over two months to be completed, showing that there was no emergency. In addition, no proof was submitted that the

building posed an imminent danger. In fact, city officials continued to work inside the building while waiting for the demolition to take place.

**{¶26}** The *Two Bridges* court held that there were factual matters in dispute over whether the declaration of an emergency was a pretext, whether an emergency existed, and whether pre-demolition notice to the owner was impractical. *Id.* at *7. The court also held that Youngstown could not assert governmental immunity because the plaintiff properly pleaded a procedural due process violation. *Id.* at *8.

**{¶27}** Appellant argues that *Two Bridges* stands for the principle that a procedural due process claim is appropriate where the state cannot substantiate that an actual emergency existed prior to the demolition, and that such a claim survives a governmental immunity defense. Appellant is correct.

**{¶28}** The second count of Appellant's complaint is captioned "Denial of Due Process of Law." (4/5/24 Complaint). Appellant recited the same type of facts that were used to preserve the due process claim in the *Two Bridges* case. This was not a vague or passing reference to due process. Appellant claimed there was no emergency, that Youngtown had not cited him for any code violations, that there was a tenant renting the property who had never raised any complaints about the condition of the property, and that the decision to demolish the house was both unreasonable and unconscionable. Under the standards set forth in *Two Bridges*, Appellant has properly pleaded his due process claim, and it is not barred by the governmental immunity defense. Arguably, the actions taken by Youngstown in this case appear more egregious than those in *Two Bridges*. In *Two Bridges*, Youngstown had gone through its process of citing the property with violation notices and allowed time for abatement. Youngstown also provided some

evidence of the problems that led to the issuance of the "emergency" demolition order, such as the sagging roof and falling bricks. Appellees provided absolutely no such evidence in this case. Their motion for summary judgment was supported only by the Order from the Fire Chief that he declared an emergency, which contained no supporting documentation. The record here contains absolutely no factual evidence to support this alleged emergency order. Hence, summary judgment should not have been granted in Appellees' favor on the procedural due process claim.

{¶29} Appellees questioned in the trial court whether Appellant's complaint can be understood to raise a federal procedural due process claim under 42 U.S.C. 1983. We agree Appellant did not specifically cite 42 U.S.C. 1983 or directly cite the U.S. Constitution. Nevertheless, since this is a notice pleading state, and the complaint contained sufficient salient facts to put Appellees on notice, we agree with Appellant that the due process claim in his complaint is sufficient to overcome a defense of sovereign immunity. As there are clearly outstanding issues of material fact regarding whether the emergency demolition was justified, summary judgment was not appropriate. Therefore, Appellant's assignment of error is sustained with respect to the due process claim in his complaint, and with respect to Appellees' counterclaim, in which they were inappropriately awarded demolition costs.

## Conclusion

{¶30} Appellant contends that the trial court should not have granted summary judgment to Appellees in this wrongful demolition case. Appellant contends that there was no emergency that would have justified demolishing the house without notice. He argues on appeal that he pleaded sufficient facts and law to sustain a due process claim

for wrongful demolition, that sovereign immunity does not apply to such a claim, and that there are genuine issues of material fact in dispute. While Appellees did not timely respond to the appeal, the record reflects a genuine dispute of material fact exists. Appellees at no time supported whether a genuine emergency existed to allow for summary judgment on the due process claim. The judgment of the trial court is reversed as to count two of the complaint dealing with procedural due process. The trial court's decision to grant Appellees' counterclaim for demolition costs is likewise reversed. The trial court's judgment is affirmed as to counts one, three, four, and five. The case is remanded to the trial court for further proceedings.

Robb, P.J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled in part and sustained in part. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed in part and reversed in part. As a result, this matter is remanded in part to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**